UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL HERNAN HERNANDEZ,<br><br>　　　　　　Petitioner,<br><br>　　　v.<br><br>RON GODWIN, Warden,<br><br>　　　　　　Respondent. | No.  1:21-cv-01124-JLT-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[THIRTY DAY OBJECTION DEADLINE]** |

Petitioner is a state prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He is currently in state prison serving a sentence of 35 years-to-life pursuant to a judgment of the Kings County Superior Court.  The habeas petition presents five claims challenging the conviction. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

**I.　　PROCEDURAL HISTORY**

On March 2, 2016, a Kings County jury found Petitioner guilty of conspiracy to commit assault with a deadly weapon upon a custodial officer (Cal. Penal Code §§ 182(a)(1), 245.3). (Doc. 16-20 at 3.[1])  The jury found true the allegations that Petitioner committed the offense for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1-5)) and that he had suffered three prior felony convictions within the meaning of California's "Three Strikes" law (Cal. Penal

---

[1] Unless otherwise noted, references are to ECF pagination.

Code §§ 667(b)-(i), 1170.12(a)-(d)(1)). (Doc. 16-20 at 3.) On July 19, 2016, the trial court sentenced Petitioner to a term of 40 years-to-life in state prison. (Doc. 16-20 at 3.)

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). On May 25, 2018, the Fifth DCA struck the five-year gang enhancement and amended the judgment accordingly, but otherwise affirmed the judgment. (Doc. 16-20 at 1-4.) Petitioner did not petition for review in the California Supreme Court.

Thereafter, Petitioner filed numerous petitions for writ of habeas corpus in the state courts. (Docs. 16-20 to 16-34.) The petitions were all denied.

On July 26, 2021, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc. 1.) Respondent filed an answer on December 9, 2021. (Doc. 15.) On January 20, 2022, Petitioner filed a traverse to Respondent's answer. (Doc. 18.)

## II.     FACTUAL BACKGROUND[2]

On April 29, 2014, deputies with the Kings County Sheriff's Department initiated an investigation after an inmate, Matthew Barrera, mentioned, while being transported back from court, that he did not want to do time for attacking a deputy. Deputies questioned Barrera regarding his comments. Barrera stated that there were "shanks" in the B4 Pod and he did not want to "move on a deputy" after being ordered to do so. He stated that another inmate, James Varela, would be able to provide more information.

Deputies later spoke to Varela who informed them that Petitioner had ordered inmates Anthony Spalding, Matthew Barrera, Paul Campos, and Varela to "hit" Deputy Luis Torres, the victim, on April 20, 2014, inside the Kings County Jail. Varela explained that the hit was supposed to take place in the B4 Pod. According to Varela, the plan for the hit was for Spalding to confront Deputy Torres as they walked into the B4 Pod and then physically attack him. Varela stated that he and Barrera were supposed to hit Deputy Torres with a jail-made shank. Campos was instructed to block any deputies that responded to assist the victim. The plan was ordered to be carried out on April 20, 2014, but was spoiled

---

[2] The facts are derived from the probation report lodged with the Court by Respondent.

2

when Deputy Torres did not enter the B4 Pod as expected. Varela also informed deputies that another inmate, Raymond Ramirez, was assigned to carry a shank on his person at all times.

According to Sergeant Henderson of the Kings County Jail, the B4 Pod is used as a housing unit for known Norteno gang inmates. Petitioner and inmates Varela, Barrera, Campos, Ramirez, and Spalding are all known and documented Norteno gang members.

As part of their ongoing investigation, deputies spoke with the victim, Deputy Torres. Deputy Torres indicated he did not have any issues with Petitioner and never had interactions outside the normal scope of his duties with any of the individuals involved. Deputy Torres stated he had several interactions with Petitioner while working and only knows Petitioner due to his employment as a detentions deputy sheriff. Deputy Torres indicated that in 2014, Petitioner confronted him about his shift behavior and unfair treatment of Norteno inmates. Deputy Torres informed petitioner he was just doing his job.

Deputies questioned Petitioner on May 2, 2014. Petitioner stated that several Kings County Jail staff had come to him and asked him to "control" the Norteno inmates. Petitioner informed staff that he had no control or power over any inmate housed at the jail. He denied having any issues with Deputy Torres or any other member of the Kings County Sheriff's Department. He adamantly denied any knowledge about a hit being placed on Deputy Torres.

Further investigation revealed that Petitioner was not happy with the treatment of fellow gang members by the victim. Petitioner issued an order to assault Deputy Torres with "full force," which meant to stab Deputy Torres. Petitioner wrote two messages authorizing the hit which were delivered through other Norteno gang members. During the investigation, Petitioner was identified as the "Authority in Charge" of the Kings County Jail for the Norteno gang and only Petitioner or his replacement trainee could have written the messages.

Deputies searched the B4 Pod and located an unauthorized shank. Based on information provided by informants, deputies also searched Ramirez's person for a shank.

3

Ramirez was placed on a body scanner which provided a positive signal. A shank was located in the holding cell toilet after Ramirez defecated. (Doc. 16-33 at 49-53.)

### III. DISCUSSION

#### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

#### B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-

406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). The petitioner "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" Shinn v. Kayer, ___ U.S. ___, ___ , 141 S.Ct. 517, 523, 2020 WL 7327827, *3 (2020) (quoting Virginia v. LeBlanc, 582 U. S. ___, ___, 137 S.Ct. 1726, 1728 (2017) (*per curiam*)). Rather, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility of fairminded disagreement*." Richter, 562 U.S. at 103 (emphasis added); see also Kayer, 141 S.Ct. at 523, 2020 WL 7327827, *3. Congress "meant" this standard to be "difficult to meet." Richter, 562 U.S. at 102.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's

ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Review of Petition

Petitioner raises five claims of ineffective assistance of counsel in his petition. He alleges defense counsel failed to: 1) investigate and interview potential witnesses; 2) impeach witness Ornelas; 3) introduce evidence of Petitioner's prior assistance with police; 4) introduce evidence and expert testimony that the messages were fake; and 5) properly investigate witnesses Varela and Barrera based on their post-trial recantations.

1. Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75 (1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable.

1  Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

2  With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

        2.     Analysis – Failure to Interview Witnesses

Petitioner first contends defense counsel failed to hire a private investigator to interview witnesses in his case. The claim fails on both prongs of the Strickland test.

First, defense counsel stated that he had indeed hired a licensed investigator. (Doc. 1 at 38.) The investigator was also an expert on gang issues. Defense counsel stated that Petitioner never informed him that a specific witness should have been used, and counsel was never given a list of witnesses that would have assisted the defense. (Doc. 1 at 38.) Counsel stated he had reviewed the file and had discussed the case with his expert and Petitioner on more than five occasions, but his review led him to conclude that character witnesses would not have assisted the defense, and there were no exculpatory witnesses. (Doc. 1 at 38.) Counsel further declared that he had discussed the possibility of character witnesses with Petitioner "but as a matter of strategy discarded the idea as it opened [Petitioner's] past to exposure in front of the jury." (Doc. 1 at 39.) Counsel noted that "[c]alling Officer Narcisse as our witness would merely have shown that [Petitioner] was in fact acting as a mouthpiece or leader and thus gave credence to the gang

1  allegation." (Doc. 1 at 39.)  Defense counsel stated he believed it better "to cross the officer to get

2  the information out that we needed." (Doc. 1 at 39.)  Thus, defense counsel provided sound

3  reasons for his strategy in this case.  A fairminded jurist could conclude that counsel's decision

4  was reasonable.

5  Petitioner also fails to show any prejudice.  To demonstrate prejudice resulting from

6  defense counsel's failure to call a witness, Petitioner "must name the witness, demonstrate that

7  the witness was available to testify and would have done so, set out the content of the witness's

8  proposed testimony, and show that the testimony would have been favorable to a particular

9  defense." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009).  Petitioner makes no such

10 showing. He merely speculates that additional witnesses would have been helpful. Thus, he fails

11 to demonstrate any prejudice.

12        3.       Analysis – Failure to Impeach Ornelas

13 Petitioner next alleges defense counsel failed to impeach Ronald Ornelas, the main

14 witness against him, with readily available evidence.  Again, Petitioner fails to satisfy either

15 prong of Strickland.

16 Petitioner fails to explain how defense counsel's cross-examination of Ornelas was

17 deficient.  Defense counsel cross-examined Ornelas at length, including Ornelas's criminal

18 history of violent criminal activity involving stabbings, beatings, possession of weapons, and

19 ordering assaults on people. (Docs. 16-11 at 85-95; 16-17 at 19-20.)  Defense counsel elicited

20 Ornelas's position of authority in the gang. (Doc. 16-11 at 96-107.)  He also cross-examined

21 Ornelas about being paid and given a deal by the prosecution in return for his testimony. (Doc.

22 16-11 at 117-120.)  Defense counsel's cross also appears to have been vigorous and thorough.

23 Petitioner also fails to demonstrate prejudice. He speculates that additional impeachment

24 would have benefitted the defense, but this is insufficient.  Jones v. Gomez, 66 F.3d 199, 205 (9th

25 Cir. 1995) ("conclusory suggestions that his trial and state appellate counsel provided ineffective

26 assistance fall far short of stating a valid claim of constitutional violation").

27        4.       Analysis – Failure to Introduce Evidence of Petitioner's Cooperation with Police

28 Petitioner next alleges defense counsel failed to present evidence that he cooperated with

police, because "that would clearly establish that such cooperation was a negative impact to the People's case." (Doc. 1 at 31.) Respondent is correct that the claim is unsubstantiated.

As noted by Respondent, the sole basis for this claim is Petitioner's own statement—with no proof—that he cooperated with law enforcement during the investigation of a 1997 arson case. (Doc. 1 at 25.) Because Petitioner provided no support for the claim, he fails to demonstrate that the state court rejection was unreasonable.

5.     Analysis – Failure to Introduce Evidence Concerning Prison Messages

Petitioner contends that defense counsel failed to present an expert to opine that the prison kites[3] were fake. The claim fails for several reasons.

As an initial matter, Petitioner makes no showing that the kites were fake, or how they were fake. He makes no offer of proof from any expert who could testify that the kites were indeed fake. This alone is fatal to his claim. In addition, defense counsel declared that "the assertion that prosecution['s] [g]ang expert was relying on fabricated evidence has no basis." (Doc. 1 at 40.) Given that defense counsel believed the kites to be authentic, a rational jurist could conclude that defense counsel made a reasonable decision in not obtaining an expert on gang kites.

Moreover, defense counsel was successful in excluding the kites from evidence with motions in limine. (Doc. 1 at 38.) He stated, "To have brought up any mention of these items during trial would have been opening up the prosecution to speak to those items and thus prejudice my client." (Doc. 1 at 38.) It would serve no purpose to undermine the authenticity of the gang kites when defense counsel had already successfully kept them out of evidence, and worse, the attempt could prove counter-productive and prejudicial.

Petitioner also fails to show any prejudice. Petitioner does not explain how the outcome would have been any different had the kites been admitted but then alleged to be fake.

6.     Analysis – Post-Trial Recantations by Varela and Barrera

Petitioner next claims that defense counsel rendered ineffective assistance in his

---

[3] A "kite" is a message or note sent between prisoners. It is often written in very small handwriting and concealed so as not to be discovered by prison authorities.

investigation in light of post-trial recantations by Varela and Barrera. Petitioner fails to demonstrate how counsel erred. Counsel stated that he discussed every aspect of the case, including potential witnesses, with Petitioner. (Doc. 1 at 40.) Counsel further stated that he instructed his gang expert to interview witnesses if Petitioner felt it necessary. (Doc. 1 at 39.) Petitioner offers no reason why counsel could or should have known that the witnesses would have recanted after trial.

Petitioner also fails to show any prejudice. Because the witnesses recanted after trial does not mean they would have recanted had defense counsel done further investigation before trial. There is no basis from which to conclude that additional investigation would have led to the witnesses' recantations. The state court could reasonably determine that counsel did not err and that Petitioner failed to show any prejudice.

## IV.     RECOMMENDATION

Based on the foregoing, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within fourteen (14) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file

//
//
//
//
//

objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 14, 2022**                              /s/ *Sheila K. Oberto*
                                                                        UNITED STATES MAGISTRATE JUDGE